Good morning. May it please the court, counsel. This trial were a novel. It would be titled The Day the Confrontation Clause Died. Here, the government led off in their opening statement going through their entire theory, and the witnesses they used at trial were not any of the five alleged victims, but were various witnesses that were used to get in the statements of the five alleged victims in violation of the confrontation clause. Can I ask you a threshold question about your confrontation argument? Are you confident that you have adequately briefed that issue such that it is before us? I don't think I've ever quite seen. I haven't been on the court quite as long as my colleagues have, but I think it's a bullet list recitation of alleged errors with no real explanation. And we've got precedent that says if you just flag things and don't really argue them, they're not preserved for appeal. I think they were argued, and I think that the case that the government cites, NLRB v. Atlanta, Georgia, is not really applicable. Keep in mind that the limits, I think I came within twenty-eight words of the word limit, and here, the confrontation clause and hearsay errors were so extensive, there was twenty-six. I don't think I've ever seen a case where I had twenty-six separate confrontation clause and hearsay errors. But many of which were admitted under what the district court found and the government had argued were exceptions to the hearsay rule, and we don't have any explanation in your brief about why those statements don't fit within those exceptions. I think it's clear that those statements don't fit within those exceptions. The NLRB v. McLean, Atlanta, Georgia case basically held that the arguments were preserved because the government was on notice and they were able to respond to them in their briefs. The difficulty is, from our perspective, is that when we get a brief that looks like this, we, and I use the royal we because what I really mean by that, quite frankly, as my of your twenty-six arguments and chased them all down because there was no, you hadn't really given us a lead about what your argument really was. So she had to go recreate all of that from whole cloth so that I could understand what was going on in the brief. Well, I think the brief has specific citations to each error, and basically what I was arguing You mean record citations? Yes, record citations to each error. But no legal explanation. That's the difficulty. That's what my law clerk was trying to sort of find for you because you hadn't presented it to us. Well, I had because the legal explanation for all of these errors were, first thirteen were clearly testimonial statements to law enforcement officers, and that was in the made that clear in the initial brief, and I think it's clear from the particular errors that a law enforcement officer such as Agent Wynn was testifying to what AO and ZR told him. I think it's pretty clear on its face. I mean, to me, that these confrontation clause errors couldn't have been more clear with respect to the law enforcement officers. So you kind of are relying on a they speak for themselves approach in the brief? Well, the problem with having all of the different issues that Mr. Cooper had, we had confrontation clause issues, hearsay issues, jury instruction issues, sufficiency of the evidence issues, opinion testimony by Agent Wynn, commenting on statements of some of the witnesses. If I was to lay out a detailed explanation of each and every one of these, this brief could have been about six hundred pages. Well, but sometimes as a lawyer, of course, you just pick and choose. What are the winning arguments? I mean, I'll just be very candid with you. My law clerk and I in going through the twenty-sixth thought there are three of these that might be serious. Well, my next question for you, if I may, of your twelve, I think, or thirteen confrontation clause alleged errors or asserted errors, which do you rely on as your strongest grounds for the relief you seek? OK, so with respect to the testimony, testimonial statements. Just testimonial right now. That's all I'm right. So Agent Wynn basically testified to several testimonial issues from AO and ZR. One, that he went to Trio, which was a restaurant that the alleged victims supposedly applied for employment to, to get out of the situation they were in. He testified that he went there to corroborate statements made by AO and ZR to him. You know, then he testified on numerous occasions that they were embarrassed and ashamed and humiliated for what had happened. Also, with respect to the North Bay Village visitor logs, he was able to testify that he spoke to these individuals that were on the visitor logs, and they basically said they came to the North Bay Village apartment to get sexual services. Detective Costa basically testified that he received a complaint from a specific tenant that had multiple units and was running an illegal business out of them, and he credited the building manager and the security guard, two additional witnesses that did not testify in this case. And then it really got worse for Mr. Cooper when the court let in the testimony of Ms. Cortina, Ms. Mamieva, and Ms. Pena, because the crux of the government's theory in this case was that these women traveled from Kazakhstan, they arrived in Miami thinking they were going to be receptionists, and then they were surprised to learn that they were going to have to perform erotic massages. And all of that testimony was clearly inadmissible, and the court just let that in through witness after witness after witness, and the defense had no way to question AO and ZR to challenge that assertion that came in through these witnesses. Also, it went to the attempted sex trafficking counts. The court let in, and I cite it as error number 13, the court let in government exhibit number three, and it was basically an individual calling CCI, who was the sponsor, to test, basically say that these three alleged victims found out that they were going to be doing massages and that they're not going to work there. And they let that in as not hearsay, not offered for the truth of the matter asserted, when really that was the proof of those particular counts, which is one of the other arguments in this case that the evidence was insufficient as to the attempted sex trafficking counts. Even if that evidence were erroneously admitted, isn't there other evidence? I mean, would we have sort of substantial prejudicial effect here, because didn't other evidence prove the same thing? I've gotten my notes, for instance, that you've got Cooper's messages with the girls, surprised, tearful demeanors that they sort of had been duped into what they were now going to have to be doing, their attempts to find other jobs, their departure from the shelter, their subsequent Facebook posts with Cooper. I mean, there's a lot of evidence that goes to the same point that you're arguing now. No, that's actually different, because the point that I'm arguing deals with the three alleged victims that actually never came to AO and ZR on the sex trafficking counts. But at the end of the day, you know, with respect to the attempted sex trafficking counts, that's it. But with respect to the sex trafficking counts, the key point was the fact that they were tricked into coming here. And the only evidence of that was not in any of the other Facebook posts that you referenced. It was through the testimony of these Mamieva, Cortina, and Pena saying that these girls didn't know what they were getting themselves into. So you don't think the litany of evidence that I just reviewed would give rise to a reasonable inference that these girls had been duped, or thought they had been duped? No, and I think the problem is, Your Honor, is it's certainly not harmless beyond a reasonable doubt, because I never got to challenge. The reason why I say this case is the day the Confrontation Clause died, is I never got to challenge these women on exactly what their mindset was when they arrived in Miami, number one, what they expected to do when they arrived in Miami. And I never got to challenge them on what they actually did and why they started doing what they allegedly did. I mean, there was a litany of questions that I could have asked them on cross-examination that I didn't get that opportunity to do. And Mr. Cooper, like every other individual that's accused, has the absolute right to confront his witness. It seems to me a lot of what you're talking about, though, is it is an unusual case not to have any victims testifying, but it's not these kinds of, you call them testimonial statements. They weren't offered to prove the truth of the matter asserted. They're showing how the investigation unfolded, and it's not that these young ladies applied for jobs at these places. It's to prove the fact that they were trying to get away from your client. That's what it's being offered to prove, but the fact that they applied for a job, it's not being offered for the truth of the matter asserted. Well, it was because the government was arguing that they tried to get away from my client, not that Agent Wynn went there to further his investigation. And the statements I mentioned with respect to Mama Eva, Cortina, and Pena don't have anything to do with furthering an investigation. They can let in observations that they're scared and upset, but they can't let in the underlying facts, and the underlying facts that they didn't know what they were getting themselves into was extremely prejudicial. Okay, Mr. Briglio, you have four minutes for rebuttal. We're going to hear from Ms. Hecker. Thank you, Your Honor. May it please the Court, Elizabeth Hecker for the United States. Your Honors, the defense has raised numerous errors, as Your Honors have pointed out, but I'd like to take a step back very quickly and explain that taking into account all of the evidence that is indisputably admissible here, there was more than enough to sustain Mr. Cooper's convictions. On the wire fraud counts, on count one, Ms. Arca of CCI testified that in a telephone call, Cooper told her that the summer work travel employees would work from a commercial office space and do office work such as answering phones, performing clerical duties, and organizing yoga retreats. Elizabeth Mr. Cooper told her that the summer work travel employees would live above a yoga studio, and that they would do clerical work, cleaning, and computer work. Can I ask you a quick question, just so I'm sort of tracking your argument? Are you now rebutting your adversary's position that there was a confrontation clause violation by saying, no matter, it was harmless beyond a reasonable doubt, or are you talking about insufficiency more generally? We're talking about both, Your Honor. He has challenged the sufficiency of the wire fraud counts and the sex trafficking counts, but what I'm saying here is, despite the fact that the vast majority, if not all, of the statements he's challenged in his brief and the rulings that he's challenged in his brief, there is still enough evidence that is indisputably admissible here to sustain Mr. Cooper's convictions. Setting aside all of the hearsay testimony, setting aside all the confrontation clause testimonial statements, your position is that even without all of that, there was sufficient evidence to convict? Yes, Your Honor, and I can further explain why. We know from Yesenia Pena that there was no clerical work to do. She came and testified there was no clerical work to do. Indeed, Mr. Cooper admitted to Agent Nguyen and Agent Yeager that he had no actual yoga studio. We know from multiple witnesses that testified who worked for Cooper that his real business was a prostitution business. We know that he was posting back page ads constantly throughout the time period, including an ad for Beautiful Girls from Kazakhstan on May 22nd, which was before AO and ZR arrived in the United States. We also know from the testimony of Susan Geary of the State Department and from Rob Delaney of CCI that they never would have approved these jobs had they known that they on the sex trafficking counts. Mr. Cooper repeatedly told Diana Ishmatova, who was the go-between between AO, ZR, and the other three women, that these would be for clerical positions at a yoga studio. That is the only thing he told her. He told her this repeatedly. There are at least three or four instances in the record where he told Ms. Ishmatova that these were clerical positions in a yoga studio, and these are his own words. They're not hearsay. They're party opponent. And we know that the job offers, which Mr. Cooper and the students signed, listed receptionist as the job and the duties as performing clerical duties for the company, setting up appointments, and answering phone calls. There is extensive evidence, Your Honors, that AO and ZR had no idea about any of this until the day they arrived in Miami. And again, just indisputably admissible evidence here, we have Mr. Cooper's statements to Diana Ishmatova a few days after the girls arrived that they were not being cooperative. They were being very difficult, and that they could make a lot of money providing sensual massages if they were just cooperate. We also have the job applications from TRIO just a few days after they arrived, showing that they immediately started looking for other work. This evidence, which is indisputably admissible, shows that they were not happy, that they were surprised when they got there and realized that they were actually there not to do yoga reception work, but to perform sex acts for Mr. Cooper's financial benefit. If Your Honor is okay, I would like to move on to address the specific statements that my counsel brought up as the most important to this case. First of all, he brought up this statement that Agent Nguyen went to TRIO to corroborate the statements of the women. First of all, this was just to explain, as Your Honor pointed out, why he went to TRIO. It was not offered for the truth, and the Jimenez case works, helps with that. But also, this is harmless. We have the applications. We have the actual applications from TRIO. So even if we didn't have that statement here, we would still know that AO and ZR went to TRIO looking for other jobs. With respect to the statements that they were embarrassed and humiliated, first of all, as we explained in our brief, these are not testimonial statements. Testimonial statements have to be in response to the primary purpose of the questioning has to be to gather evidence for trial. As we pointed out in our brief, the point of the questions there that Agent Nguyen asked the women was to see if they would come testify. These are not factual statements, so they're not testimonial. So we're only dealing with hearsay. And as we've explained in our brief, these are traditional or textbook state of mind statements here. They're talking about being embarrassed, being humiliated, and not wanting to go back. With respect to the visitor logs, it's unclear from the record. This is the visitor logs where the men confessed that they were there to answer back page. It is not clear that they were offered for the truth. It could be that they were offered just to explain. This came after extensive questioning about why Agent Nguyen didn't go and look at Airbnb. Why didn't you look at Airbnb? Agent Nguyen explained that he didn't go to Airbnb because he already knew why the men were there. So it was just to explain his investigation. But in any case, if there is anything that is overwhelmingly proved in this case, it is that Mr. Cooper had a prostitution business that he was running out of the Bayshore Yacht and Tennis Club. So this is harmless. Again, we already know he was running a prostitution business. A bit of extra evidence that certain men had gone there looking for sex was not prejudicial in light of all the other evidence here. With respect to Agent Costa explaining that he had received information that there was an illegal business being run out of the apartments. Again, this was just to explain why he took the additional step of contacting Miami-Dade. And indeed, the court gave a limiting instruction here and said this is only coming in because he got this information to explain his next of the testimonial statements that were admitted or the hearsay statements that were admitted a problem for you? And if so, can you address the ones that were not accompanied by limiting instructions and explain why it doesn't matter? Sure, Your Honor. It certainly would make my job easier today if limiting instructions had been given more often, but I will say... Put yourself to the district judge. Certainly. However, I will say that we know from the Jimenez case that even where the court, excuse me, we know from precedent, this circuit's precedent, that a limiting instruction is only error when it is requested and is denied. I mean the absence... Excuse me. Yes, Your Honor. The absence of a limiting instruction is only error when it is requested and denied. So, and I can give you a case on that if Your Honors would like. I just have to look it up very quickly, but that is circum precedent here. So, it would certainly make it easier, Your Honor, but it is not necessary in the absence of a request and a denial. With respect to the statements to particularly Mameyeva and the other women, the statements to Mameyeva happened the very day that the women arrived. In fact, Mr. Cooper picked up the women in his car, then drove to pick up Violeta Mameyeva at the bus stop. This was maybe an hour or two after they arrived and learned that they would be performing sex acts. These are excited utterances under precedent. Again, this was just mere hours, if that, after they arrived and learned from Mr. Cooper that they would be performing sex acts. And finally, with respect to the OLAWS testimony, the relative of one of the three women who did not come, those statements were simply admitted to provide context for what CCI and specifically Mr. Delaney did in response. He decided they should investigate further and Mr. Delaney testified to that. And again, the court gave a limiting instruction with respect to this particular statement. If Your Honors have any more questions, I'm happy to answer them. If not, thank you. Thank you, Ms. Hecker. Mr. Coriglio, you have four minutes. The evidence here on human trafficking versus prostitution was far less compelling. There's a big difference between prostitution and human trafficking. The crux of the government's human attempted human trafficking case was all came in from inadmissible testimony. The key issue with respect to the two human trafficking counts, AO and ZR, was their state of mind. Were they tricked into performing these acts? And we have no evidence of that in the record other than the government just mentioned, hey, that was the first day they were there. But some of those statements were made after they spent the day on South Beach. And they cite the Belfast case as a reason why this should be an excited utterance. I mean, in the Belfast case, the person was electrocuted. It was a torture case. The person was beaten, interrogated, electrocuted with a cattle prod. I mean, none of that is here. I mean, to say that these statements to Mama Eva, Cortina, and Pena was an excited utterance would just open the floodgates for anything to be an excited utterance. So I think that the court needs to really distinguish about what the sufficiency of the evidence claims with respect to the prostitution issue versus the human trafficking issue. Because it's a really big difference here. If these women were that they were being human trafficked by Mr. Cooper at all. And that's really the only testimony that we have on that point. You know, with respect to the Jimenez case that they mentioned, Jimenez was a situation where the defense counsel brought up some questioning and repeated interrogations of his client on cross-examination. And it allowed the government to go into some of those statements. But here, with the North Bay Village visitor logs, I just specifically asked whether Agent Wynn subpoenaed Airbnb. That didn't cause Agent Wynn, I mean, that didn't open the door for Agent Wynn to be able to start testifying to what these other people told them. I mean, this case against Mr. Cooper became impossible to defend because we had all of these witness statements coming in from all of these other witnesses, AO, ZR, XM, all house, I mean, without being able to challenge them. Each time I challenged one of these witnesses. And the other important point with respect to prostitution versus human trafficking is every single witness that the government presented did not testify that Mr. Cooper tricked them. All of them testified that they were voluntarily in the business. Every single one of them, Pena, Cortina, Mamieva, Marikova, every single one of them. That's a big difference between the women that testified and the women that testified through these women in violation of the Confrontation Clause and violation of the hearsay rules. And once again, I've just gone back to that case that Your Honor led off with. The bottom line is the whole purpose of notices and articulating things in the brief is so the government can respond and the court can understand the argument. And here it's clear, and in that case, I believe that that general brief was found sufficient by this circuit. So here, mine is more specified because it breaks down each and every one, but the whole purpose of that case. Mr. Kurglio, I think we have your case. Thank you.